**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Criminal Action No. **3:13-CR-128-L-1** |
| | § | |
| **STERIC PAUL MITCHELL (1)**, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Steric Paul Mitchell's Motion to Suppress (Doc. 79), filed August 15, 2014. On December 17, 2014, the court held a hearing on Defendant Steric Paul Mitchell's ("Mitchell" or "Defendant") Motion to Suppress; Supplement to Motion to Suppress (Doc. 105), filed September 19, 2014; and Second Supplement to Motion to Suppress (Doc. 127), filed December 19, 2014. After careful review of the motion, responses, record, and evidence, the court **denies** Defendant Steric Paul Mitchell's Motion to Suppress.

Defendant requests that the court suppress any fruits of the Duncanville Police Department's ("DPD") alleged illegal search of Mitchell's Metro PCS Kyocera cell phone ("cell phone"), which was seized the day of his arrest and searched the following day. The government contends that the cell phone was searched pursuant to a valid search warrant and that even if the cell phone was searched incident to arrest, the search was in accord with then-existing Fifth Circuit precedent.

I.    **Defendant's Argument for Suppression**

Defendant contends that the court's suppression of evidence obtained from his cell phone is proper because DPD searched his cell phone without a warrant. Defendant reaches this conclusion based on his account of the events that took place on the day of his arrest, May 7, 2012. Defendant argues the following with respect to his May 7, 2012 arrest:

- 10:02 a.m.- the alleged victim calls 911.

- 10:22 a.m.- DPD arrives at 619 Willowbrook Circle.

- 10:24 a.m.- Mitchell exits and then reenters the residence.

- 10:26 a.m.- Mitchell exits the residence, and the police tase and detain him.

- 10:57 a.m.- Mitchell sends a text message to Rachel Ellinger.

- 1:40 p.m.- Search warrant for 619 Willowbrook Circle is signed.

Def.'s Mot. To Suppress 2-3.

On May 8, 2012, DPD performed a "Cellubrite" search on Mitchell's cell phone. Def.'s Mot. to Suppress 3. According to Defendant, DPD performed a warrantless and therefore illegal[1] search of Defendant's cell phone.

Defendant contends that the government cannot rely on the warrant issued on May 8, 2012, either as the basis for the search or a good faith exception, because the phone was not at the residence at the time of the warrant's issuance and execution. Def.'s Reply (asserting that the phone was not seized at 619 Willowbrook, and "[a]s such, the officers could not have relied on 619 Willowbrook warrant.") (citation omitted). Defendant's recitation of the facts are clear: the phone

---

[1] The Supreme Court's decision in *Riley v. California*, 134 S. Ct. 2473 (2014), which was decided after Mitchell's arrest, held that officers could not search cell phones incident to an arrest.

**Memorandum Opinion and Order - Page 2**

was neither seized nor searched pursuant to a warrant. Because the search warrant did not cover the cell phone, DPD officers searched the cell phone incident to Mitchell's arrest. Therefore, according to Defendant, the search was illegal, and the fruits of the search must be suppressed.

## II.     Analysis

Defendant contends that the court should suppress evidence obtained from Mitchell's cell phone, as officers conducted a warrantless search of Defendant's phone incident to his arrest. The government argues that the search warrant covered the search of the cell phone; the officers relied on and executed the warrant in good faith; and even if the officers seized the data on Mitchell's phone incident to his arrest, the officers acted in good faith reliance on then-applicable precedent. Defendant and the government slightly vary in their accounts of the events that took place on May 7, 2012;[2] however, even when the court accepts Defendant's account of that day, suppression of evidence is not warranted. Thus, even assuming the cell phone was searched incident to arrest and not pursuant to a search warrant — the linchpin of Defendant's argument — the court cannot grant Defendant's Motion to Suppress.

Last year, the Supreme Court decided *Riley v. California*, 134 S. Ct. 2473 (2014), which held that officers could not search cell phones incident to an arrest. *Riley* provided officers a clear instruction: "Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple — get a warrant." *Riley*, 134 S. Ct. at 2495.

---

[2] The government contends that the phone was seized at 619 Willowbrook and not at the police station, as Defendant contends. According to government, "Sergeant McCaleb credibly testified that he seized the phone from Mitchell at the premises described in the warrant. . . ." Gov't's Resp. to Def.'s Sec. Suppl. to Mot. to Suppress 1. In any event, even if the court accepts the facts as Defendant presents them, suppression is not warranted for the reasons explained in this section.

**Memorandum Opinion and Order - Page 3**

Although officers searched Mitchell's phone on May 8, 2012, prior to *Riley*, "newly announced rules of constitutional criminal procedure must apply 'retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception.'" *Davis v. U.S.*, 131 S. Ct. 2419, 2426 (2011) (quoting *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)). Thus, *Riley*'s categorical rule prohibiting warrantless searches of cell phones applies retroactively to the search of Mitchell's cell phone, as no final judgment has issued in this case.

Even if the court accepts Defendant's assertion that officers searched his phone incident to his arrest, the court's inquiry does not end with a determination that *Riley* applies retroactively. That officers needed a warrant to search Mitchell's cell phone does not supply the answer as to whether the court should exclude the evidence obtained from the cell phone. Retroactivity does not mandate application of the exclusionary rule, as "the retroactive application of a new rule of substantive Fourth Amendment law raises the question whether a suppression remedy applies; it does not answer that question." *Davis*, 131 S. Ct. at 2426 (citing *U.S. v. Leon*, 468 U.S. 897, 906 (1984)).

The Fourth Amendment protects against illegal searches and seizures, but it "says nothing about suppressing evidence obtained in violation of this command." *Davis*, 131 S. Ct. at 2426. "Exclusion is 'not a personal constitutional right,' nor is it designed to 'redress the injury' occasioned by an unconstitutional search." *Id.* (citations omitted). Instead, the exclusionary rule is a prudential doctrine "created by [the Supreme Court] to 'compel respect for constitutional guaranty.'" *Id.* "The rule's sole purpose . . . is to deter future Fourth Amendment violations." *Id.* (citations omitted).

...

Because its sole purpose is to act as a deterrent to future violators, the exclusionary rule does not apply "when the police conduct a search in objectively reasonable reliance on binding judicial precedent." *Davis*, 131 S. Ct. at 2427. In *Davis*, officers arrested Davis and his codefendant and detained them in separate patrol cars after conducting a traffic stop. *Id*. The officers then conducted a search of Davis's vehicle incident to his arrest, which was plainly permitted by the law in the Eleventh Circuit, the governing and controlling circuit in the case. *Id.* at 2428. While Davis's appeal was pending, the Supreme Court decided *Arizona v. Gant*, 556 U.S. 332 (2009), and the holding of *Gant* subsequently made the officer's search of Davis's vehicle illegal under the Fourth Amendment. *Davis,* 131 S. Ct. at 2425. Nevertheless, the Court held that the exclusionary rule did not apply because the officers followed then-existing precedent and stated:

> About all that exclusion would deter in this case is conscientious police work. Responsible law-enforcement officers will take care to learn "what is required of them" under Fourth Amendment precedent and will conform their conduct to these rules. . . . But by the same token, when binding appellate precedent specifically authorizes a particular police practice, well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities. An officer who conducts a search in reliance on binding appellate precedent does no more than "'ac[t] as a reasonable officer would and should act'" under the circumstances. . . . The deterrent effect of exclusion in such a case can only be to discourage the officer from "'do[ing] his duty.'"

*Id.* at 2429 (citation omitted).

The government cites *U.S. v. Spears*, 2014 WL 3407930 (N.D. Tex. July 14, 2014), in which the court held that the exclusionary rule did not apply to a search of the defendant's cell phone incident to his arrest, which was subsequently made illegal by *Riley*. Before *Riley*, the Fifth Circuit permitted officers to search cell phones incident to an arrest without first obtaining a warrant. *See U.S. v. Finley*, 477 F.3d 250, 259 (5th Cir. 2007) (holding that police officers were permitted to search a defendant's cell phone incident to his arrest). *Spears* relied on *Davis* to conclude that

**Memorandum Opinion and Order - Page 5**

although *Finley* was "losing steam," it, nevertheless, "remained good law in the Fifth Circuit." *Spears*, 2014 WL 3407930, at *4. Accordingly, the court held that admission of evidence retrieved from the cell phone was proper. *Id.*

The facts of this case fit squarely within the exception to the exclusionary rule crafted in *Davis*. Even assuming Defendant's recitation of the facts is correct and that the officers searched Mitchell's cell phone incident to his arrest without a search warrant, the officers conducted the search nearly two years before *Riley*, and then-existing precedent under *Finley* permitted such a search.[3] The officers' "objectively 'reasonable good-faith belief'" that the search was permitted does not warrant exclusion of evidence. *See Davis*, 131 S. Ct. at 2427-28 ("But when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful . . . or when their conduct involves only simple, 'isolated' negligence . . . , the 'deterrence rationale loses much of its force,' and exclusion cannot 'pay its way.'") (citations omitted); *see also Leon*, 468 U.S. at 907-08 ("Particularly when law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system.").

Defendant argues that the officers conducting the search of Mitchell's phone did not rely on *Finley* because they believed, albeit erroneously according to Defendant, that the warrant for 619 Willowbrook covered the search of the cell phone. Defendant additionally contends that the public policy concern underpinning the *Spears* decision — deterring future police misconduct — is not

---

[3] Defendant's Second Supplement to Motion to Suppress (Doc. 128), filed December 19, 2014, requests that the court order production of video surveillance footage of Defendant's arrival and booking at the police station, to the extent such footage exists. The government contends that no such footage exists because there was a server crash and a subsequent move to a single-server system. Accordingly, the court cannot order production. Even so, for the purposes of this opinion, even when the court assumes Defendant's recitation of the facts is true, suppression is not warranted.

**Memorandum Opinion and Order - Page 6**

present in this case. Def.'s Reply 4 n.7 ("[T]he facts of this case where the police 'executed' a search warrant for a house in their police station 1.2 miles away excluding the illegally obtained information sends a clear message that police must scrupulously follow the strictures placed in warrants.").

According to Defendant, the government has not supported its contention that the officers relied on *Finley* with any affidavits or evidence. Specifically, he asserts, "what is easy to type may not be what the officers actually did or what they will swear to in court." Def.'s Reply 5. Defendant maintains that "it is highly unlikely that the officers in question actually relied upon now-obsolete Fifth Circuit precedent," and that "[a]t the very least, Mr. Mitchell deserves the veracity of these assertions through the crucible of cross-examination." *Id.* The court provided Defendant with such an opportunity at a hearing on December 17, 2014.

At the hearing, Sergeant McCaleb gave the following testimony:

Q: Now, when you seized Mr. Mitchell's cell phone at the scene, did you search it incident to arrest, did you flip through it?
A: No, sir, I did not.
Q: And this was May of 2012. Did you have any understanding of the law regarding whether that would have been legal at the time?
A: Yes, I did.
Q: What was your understanding?
A: That that was legal - - that would be legal to do.
Q: Is there any reason you would search through it?
A: For me to search through it?
Q: Yeah.
A: Not at that time.

Although the court granted Defendant's request for a hearing to test the veracity of these assertions, *Davis* instructs courts to focus on the "objectively reasonable reliance on binding appellate precedent" and makes no mention of the subjectively reasonable reliance of an officer. *See Davis*, 131 S. Ct. at 2429 ("[T]he harsh sanction of exclusion 'should not be applied to deter

**Memorandum Opinion and Order - Page 7**

objectively reasonable law enforcement activity.'") (citation omitted). Nonetheless, according to the government:

> The officers here understood that the law existing at the time of Mitchell's arrest authorized them to search any cell phone that they seized incident to arrest. . . . Out of an abundance of caution, however, they held off on an immediate search of Mitchell's phone and instead sought and secured the May 7, 2012 search warrant.

Gov't's Resp. 12. Even if the officers attempted to obtain a warrant "out of an abundance of caution," the warrant was an additive measure, and the officers did not believe a warrant was necessary to search the phone, as they were aware that the law in effect at that time permitted them to search the cell phone incident to Mitchell's arrest. Thus, the testimony of Sergeant McCaleb confirms that "the deterrent effect of exclusion in such a case can only be to discourage the officer from doing his duty." *See Davis*, 131 S. Ct. at 2429 (citations and internal quotation marks omitted).

Because the search of the cell phone complied with the Fifth Circuit's then-existing rule of law, the court **denies** Defendant Steric Paul Mitchell's Motion to Suppress.

**It is so ordered** this 2nd day of February, 2015.

*/s/ Sam A. Lindsay*
Sam A. Lindsay
United States District Judge